Not Recommended for Publication or Citation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-030-GFVT

VERNON NORMAN EARLE                                                          PLAINTIFF

VS:                  **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                                  DEFENDANT

**** **** **** ****

This matter is before the Court on the Defendant's Motion for Summary Judgment, the Plaintiff having now fully responded thereto.

BACKGROUND

In February of 2007, Plaintiff Vernon Norman Earle, who was then confined in the United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky, paid the District Court filing fee for a civil action and filed the instant *pro se* complaint, asserting the jurisdiction of this Court under the Federal Tort Claims Act ("FTCA"), the Plaintiff citing specifically to 28 U.S.C. §§ 1331, 1346(b), 2401(b), and 2671, *et seq*.

Earle alleged that employees of the Federal Bureau of Prisons ("BOP"), from whom he repeatedly sought medical attention for a "chronic ear infection," committed gross negligence and breached the duty of care they owed him, such that he has suffered a permanent injury to his ear. He sought substantial damages and injunctive relief in the form of an order to the defendants to provide him with "proper medical treatment and care as authorized by previous specialists . . .

."

After screening the complaint, in a Memorandum Opinion and Order issued April 10, 2007, the Court summarized the Plaintiff's factual allegations about his treatment as follows:

> . . . [The Plaintiff] begins with the assertion that he has a chronic ear infection, for which he first went to sick-call at the prison infirmary on May 24, 2005.
>
> Since that time, Plaintiff has purportedly been examined, evaluated, and prescribed medication by the prison's Health Services personnel on several different occasions, but his condition continues to cause him considerable pain. He claims that the medical personnel "knowingly and willfully failed to provide the Plaintiff with proper medical treatment and care commensurate with the duty of care owed to him by the Defendant, which has resulted in the Plaintiff's diminished hearing."
>
> Earle attaches to his complaint a copy of the FTCA's administrative Form 95, which he signed, and presumably submitted to the BOP, on October 27, 2005, and he also attaches a copy of the BOP's response by letter dated March 8, 2006. In the letter, BOP counsel described the medical care given the plaintiff, stated that he found no negligent act or omission therein, and denied the claim. Exhibit A.
>
> . . .
>
> Five months after receipt of the BOP's letter denying his claim, the petitioner filed the instant lawsuit.

Record No. 6 at 2-3. Noting that the Plaintiff had alleged negligence, properly named the United States as the sole Defendant, and demonstrated exhaustion of the FTCA administrative remedies, this Court directed that summons issue for the United States.

<h3 style="text-align:center">DEFENDANT'S MOTION</h3>

The Defendant chose to respond to Earle's complaint with a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure [hereinafter "Rule"] 56(b).

With the supporting declaration of Dr. Richard Ramirez, a Clinical Specialty Consultant

2

for the BOP, and Plaintiff's medical records[1] attached to the declaration, the United States recites the times and types of medical attention given to Plaintiff's recurring ear infection, beginning on January 23, 2005 and essentially concluding with a November 2005 evaluation by an ear, nose and throat specialist. The government claims that Plaintiff has complained of ear infection symptoms only twice since then, on September 5th and October 17th of 2006, and not at all in 2007.

The United States summarizes its position as follows:

> A prima facie case of negligence does not exist in this case because the required element of a deviation from a reasonable standard of medical care is not present. Plaintiff's medical records show USP Big Sandy medical staff properly treated Plaintiff's chronic ear infections over a long period of time with a regimen of antibiotic therapy, ear wax medication, irrigation, proper instruction on keeping the ear dry, and a referral to an outside specialist. Because of the chronic nature of the infection and perforation in the ear drum likely caused by the infection, the symptoms of the infection persisted. Eventually, due to the proper treatment by USP Big Sandy medical staff, the infection subsided and the Plaintiff has not made any complaints about the ear in 2007.

Record No. 19 at 1-2.

The Defendant points out that under the FTCA, the Court must apply the law of the state where the alleged negligence occurred. According to the United States, the Plaintiff has failed to show either of the two requirements for liability to attach under Kentucky negligence law. He has demonstrated neither that the BOP deviated from the applicable standard of care, nor that the purported deviation was a substantial factor in producing the harm complained of. Therefore, the Defendant urges entry of summary judgment in its favor.

PLAINTIFF'S RESPONSE

---

[1] The Court has ordered Earle's medical records to be kept under seal in the Clerk's Office. *See* D.E. 19-21.

In his Response [Record No. 24], Earle insists that he has alleged gross negligence for the treatment of his ear condition and that the standard for gross negligence is whether BOP medical personnel were deliberately indifferent to his serious medical needs, as explained in *Estelle v. Gamble*, 429 U.S. 97 (1976). That he suffered pain, thus making his medical need serious, is reflected in the BOP's own records, which show that pain medications were supplied for him while his ear was being treated. That the BOP was deliberately indifferent is also reflected in these records, some of which show the repeated use of a medication which should not have been so used, and he attaches his own declaration to contradict the facts as the BOP declared them to be.

Plaintiff contends that staff prescribed "neomycin/poly B salfate Hydrocortisone Otic solution" for him in January, again in March, and again in May of 2005, in contravention of the information accompanying the medicine itself. He attaches a copy of this document which warns against its use for longer than 10 days and suggests a culture be performed if the medication is ineffective. Earle insists that despite this information and his repeated complaints that the drug was not working, the prescription was repeatedly refilled nonetheless; additionally, the recommended culture was not taken until June of 2005 – even then, it was at his request, not that of the medical professionals. According to the Plaintiff, "it was this medication and the continual use there of that cause[d] the perforation" of his ear drum. *Id.* at 6.

Earle characterizes the Defendant's Motion as being premature, as there are issues of fact which preclude entry of summary judgment at this time. In addition to the actual cause of the perforation of his ear drum, Plaintiff points to several other disputed matters, *e.g.* how many times he sought medical help for the ear in 2006, claiming that there was a third time, on July

13th; the government's records to the contrary, he was never prescribed Augmentin and Cortisporin ear drops, his ear was not irrigated until August of 2005, and it was the nurse who found the ear drum perforation at that time; and he was not treated by doctors most of the time, including Declarant Dr. Ramirez, whom he did not see until September 5, 2006. Earle urges the Court to deny the Defendant's Motion for Summary Judgment.

## ADDITIONAL PLEADINGS

The Defendant has filed a Reply [Record No. 25] in which the government points out that deliberate indifference is the standard for a Constitutional claim, not for negligence. Plaintiff has alleged negligence, for which, under Kentucky law, "[t]he burden of proof is upon the patient to prove the negligence of a physician or surgeon, and that such negligence was was the proximate cause of his injury and damages," the United States quoting from *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006).

The Defendant repeats his assertion that the Plaintiff has not met the requirements for stating a negligence claim under Kentucky law. Additionally, the government insists, Plaintiff must have expert testimony in order to proceed with his lawsuit, and he has not responded with the opinion of an expert which conflicts with that of the Defendants' declarant physician. Nor has he indicated that such an expert opinion will be forthcoming. Therefore, dismissal is proper.

The Plaintiff has recently filed two additional pleadings, his "Objections" to the Defendants' Reply and a Motion for Appointment of Counsel [Record Nos. 26-27]. In the former, he continues citing deliberate indifference case law and again insists that there are material facts for a jury to decide. As grounds for his motion for counsel, Earle points to his lack of legal training and resulting need for assistance, contends that it would also be in the interest of

justice for him to have such assistance, states that the issues herein are complex, and alleges that he is indigent, hence unable to obtain counsel on his own.

## DISCUSSION

### Proper Standard

Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

In its consideration of a motion for summary judgment, the Supreme Court of the United States has further directed that a District Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial; "metaphysical doubt" is insufficient. *Matsushita*, 475 U.S. at 587. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). The moving party has

the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25.

After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

## Nature of the Instant Claims

With regard to the standards which must be met in presenting a medical negligence claim, the Defendant is correct that medical malpractice or negligence is not cognizable in a civil rights lawsuit. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). "It is obduracy and wantonness, not inadvertence or error" that characterize violations of Constitutional magnitude. *Whitley v. Albers*, 475 U.S. 312 (1986). Thus, a Constitutional claim would require an inquiry into the culpability of the Defendant's state of mind, *i.e.*, his "deliberate indifference." *See Farmer v. Brennan*, 511 U.S. 825, 840-41 (1994).

However, to the extent that the instant Plaintiff claims that the BOP personnel were deliberately indifferent to his serious medical needs and/or that gross negligence is sufficient to state a Constitutional violation under *Howard v. Grinage*, 6 F.3d 410, 415 (6th Cir. 1993), the Court finds that he is barred from proceeding on such a claim. As his own exhibits to his Response show, Earle exhausted the deliberate indifference/Eighth Amendment claim about the treatment of his ear in 2005, via use of the BOP's administrative remedy process. He began that process on June 2, 2005, and exhausted its final step with the response of the Administrator of

National Inmate Appeals, dated September 13, 2005.

That exhaustion occurred more than two years ago. The state statute of limitations for personal injuries governs claims under the U.S. Constitution. *Wilson v. Garcia*, 471 U.S. 261 (1985); *Frisby v. Board of Education of Boyle County*, Ky. App., 707 S.W.2d 359, 361 (1986). The statute of limitations which this Court must apply for civil rights actions arising in Kentucky is one year. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)) (§ 1983 actions in Kentucky are limited by the one-year statute of limitations found in Kentucky Revised Statute § 413.140); *see also University of Kentucky Bd. of Trustees v. Hayse*, 782 S.W.2d 609 (Ky. 1989), *cert. denied*, 497 U.S. 1025 (1989) and 498 U.S. 938 (1990).

Applying Kentucky's statute of limitations to Plaintiff's claim of deliberate indifference to his serious medical needs, it is obvious that such a Constitutional claim is time barred. Earle exhausted the administrative remedy process, a prerequisite for filing a civil rights lawsuit under 42 U.S.C. § 1997e(a), on September 13, 2005, but he then waited 17 months, until February 16, 2007, before filing his civil rights lawsuit. Therefore, to the extent that the Plaintiff asserts a claim of deliberate indifference with regard to his medical care, his effort must fail.

Negligence Claim

In contrast, the Plaintiff's negligence claim under the FTCA is both exhausted and timely filed. With regard to the law applicable thereto, the Sixth Circuit has written, "As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred. 28 U.S.C. §§ 1346(b) § 2674; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir.

1991) . . . ." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). Accordingly, the Court looks to Kentucky's negligence law to determine whether Plaintiff has presented the essential components of such a claim, as he insists, or whether he has failed to establish either the breach of due care or a causal connection between the BOP staff's actions and the perforation of his ear drum and hearing loss, as the Defendant insists.

Under Kentucky negligence law, the Plaintiff must establish the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Ferguson v. United States Army*, 938 F.2d 55 (6th Cir. 1991) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 143 (Ky. 1980)); *M&T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740 (Ky. 1975).

A crucial aspect of a Kentucky medical negligence case is the requirement that a plaintiff establish the standard of skill expected and the opinion that the alleged negligence proximately caused the injury. *Reams v. Stutler,* 642 S.W.2d 586, 588 (Ky.1982). The opinion of the expert must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.,* 50 S.W.3d 210, 213 (Ky.App.2001).

In the case *sub judice*, the moving Defendant has supplied the supporting declaration of one of its consultant prison doctors as to a "likely" cause for the recurring infection and ear drum perforation, *i.e.*, the infection itself. The Plaintiff has responded with his own self-styled declaration, and he has attached a copy of the information sheet which came with the drug repeatedly prescribed for him, to support his claim that the care of his ear problem was not consistent with the instructions of the drug's maker and he suffered certain damage to his ear which is warned-of in the instructions.

When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of the plaintiff's claim, as in the present case, Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 324. The proffered evidence need not be in admissible *form,* but its *content* must be admissible. *Celotex Corp.,* 477 U.S. at 324. For instance, deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact. *See Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

The document put forward by the instant Plaintiff will not itself be admissible at trial. It does, however, contain several warnings, upon which the Plaintiff relies, beginning as follows:

> Neomycin can induce permanent sensorineural hearing loss due to cochlear damage, mainly destruction of hair cells in the organ of Corti. The risk of ototoxicity is greater with prolonged use; therefore, duration of therapy should be limited to 10 consecutive days (see PRECAUTIONS, General) . . . .

Attachment to Record No. 24. A mere reading suggests that the Defendant is correct that expert evidence will be necessary in this case. It appears an expert will probably be necessary as to the standard of care, any breach in the standard of care, and also the cause of any damage to this Plaintiff's ear. The Court believes that the Plaintiff is also correct, however, when he describes the summary judgment motion as premature.

The Court is not prepared to require expert testimony now, of a *pro se* Plaintiff who has had no opportunity for discovery. In the case relied upon by the Defendant herein, the appellate court recognized that summary judgment is proper only when it appears that it would be

10

impossible for the adverse party to produce evidence at trial warranting a judgment in his favor (citing *James Graham Brown Foundation Inc. v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273, 276 (Ky. 1991)) and when the District Court finds that there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law (citing *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996)). *Andrew*, 203 S.W.3d at 169. The Sixth Circuit affirmed the grant of summary judgment therein, *after* discovery, during which the Plaintiff had failed to produce expert evidence on her medical negligence claim. *Id.* at 168. The same may eventually occur herein, if Plaintiff does not produce expert medical evidence, but it will not occur today. The Court will deny the instant motion of the Defendant, without prejudice to the re-filing of another summary judgment motion, if warranted after there has been an opportunity for discovery.

## Motion for Appointment of Counsel

Plaintiff's motion for appointment of counsel, which accompanied his initial pleadings, will be denied at this time. The Court notes that counsel cannot be appointed and paid on this type of case pursuant to 28 U.S.C. § 1331. In a civil action such as this, the Court may only "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e).

Further, the courts have limited such a request to only "exceptional circumstances" (*See Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993); *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (citations omitted)). Also, see factors discussed in *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995), *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995), and *Tabron v. Grace*, 6 F.3d 147, 156-57 (3rd Cir. 1993), *cert. denied*, 510 U.S. 1196 (1994).

Plaintiff Earle has not presented exceptional circumstances. In fact, he has failed to

establish even the first requisite, *i.e.,* his indigency. He paid the full $350.00 filing fee for this civil action in a lump sum. Further, Earle has shown an ability to speak for himself. There is no complexity in the facts, as his treatment was for one ailment for less than one year; nor is there complexity in the applicable law, which is simple negligence. Plaintiff has not even alleged an inability to obtain counsel independently, or any other reason which would warrant the appointment of counsel herein.

Therefore, his Motion for Appointment of Counsel will be denied without prejudice to his re-filing another motion, if warranted later.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Plaintiff Vernon Norman Earl's Motion for Appointment of Counsel [Record No. 27] is **DENIED**, without prejudice.

(2) The Defendant's Motion for Summary Judgment [Record No. 19] is also **DENIED**, without prejudice.

This the 14th day of October, 2007.

**Signed By:**
*Gregory F. Van Tatenhove*
**United States District Judge**